UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MATTHEW ZILER                    CASE NO.  6:21-CV-01697

VERSUS                           JUDGE ROBERT R. SUMMERHAYS

USA ET AL                        MAG. JUDGE CAROL B. WHITEHURST

**REPORT AND RECOMMENDATION**

Before the undersigned, on referral from the district judge, is the Motion to Dismiss [Doc. 3] filed by the United States of America ("USA"), the United States Postal Service ("USPS"), and Cassandra Daniels (hereinafter collectively referred to as "defendants").  The plaintiff opposes the motion [Doc. 5], and the defendants filed a Reply brief [Doc. 6].

On January 21, 2022, the undesigned magistrate judge conducted oral argument on the motion and allowed jurisdictional discovery [Docs. 11, 13]. Supplemental briefing was filed by the parties on March 22, 2022 [defendants, Doc. 14] and March 24, 2022 [plaintiff, Doc. 15].  Considering the briefs of the parties, the documentation provided, and as more fully set forth in this Report, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of a motor vehicle accident that occurred on November 1, 2018, in which a USPS employee, Cassandra Daniels, acting in the course and scope of her duties with the USPS, caused her vehicle to collide with a truck being operated by Matthew Ziler. The truck operated by Matthew Ziler was owned by Matthew and his father, James Ziler.

On or about December 24, 2018, Matthew and James Ziler jointly submitted a Standard Form 95 ("SF-95") to the USPS seeking $9,750.00 in damages related to the November 1, 2018 accident.[1] In Section 9 of the SF-95, entitled "Property Damage," plaintiffs wrote "back passenger door, windshield, rim, tire and bed of truck."[2] In Section 10 of the SF-95, entitled "Personal Injury/Wrongful Death," plaintiffs wrote "N/A."[3] The SF-95 stated that there was a sum certain of $9,750.00 in property damage; the property damage claim is the only claim that was presented to the USPS in the first SF-95.

After receiving the SF-95, the Tort Claims Accounting Service Center of the USPS sent a letter to plaintiffs on or about April 22, 2019,[4] which states:

---

[1] The first SF-95 submitted by the plaintiffs is attached as Exhibit A to the July 14, 2021 Declaration of David Kupper, Gov't Exh. 1. [Doc. 3-3]

[2] *Id.*

[3] *Id.*

[4] *See* Exhibit B to Gov't Exh. 1. [Doc. 3-3]

> Enclosed please find a check in the amount of $6,686.00 made payable to Matthew and James Ziler in full and final settlement of the claim filed on behalf of the above referenced claimants.
>
> Pursuant to 28 U.S.C. § 2672 and 39 C.F.R. § 912.14, acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the United States Postal Service or any employee whose act or omission gave rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or any outstanding indebtedness, resulting from this incident must be satisfied from the proceeds of this check.[5]

Included with the letter was a check made payable to Matthew and James Ziler in the amount of $6,686.00.[6]  The check was cashed/deposited on April 25, 2019, and the check cleared on April 26, 2019.[7]  Approximately six months later, on October 29, 2020, plaintiff Matthew Ziler submitted a second SF-95, concerning the same November 1, 2018 accident, but this time, the form included a claim for personal injury damages, as well as a claim for the full amount of Matthew's property damage, seeking a total of $2,509,750.00.[8]

In response to this second claim, on December 21, 2020, Kimberly Herbst, a supervisor and tort claims examiner/adjudicator for the USPS, sent a letter to Jeremy Suire, counsel for Matthew Ziler, which states:

---

[5] *Id.*

[6] *Id.*

[7] *See* Exhibit C to Govt Exh. 1 [Doc. 3-3].

[8] *See* plaintiff's Complaint [Doc. 1, at Para. XXVI].

3

This letter refers to the second claim filed by or on behalf of Matthews Ziler seeking damages in the amount of $2,509,750 arising out of the November 1, 2018 motor vehicle accident with a Postal Service vehicle in St. Martinville, LA. Matthew Ziler filed his first claim regarding this accident with the Postal Service on or about November 1, 2018 requesting $9,750 for property damage.

On April 22, 2019, the Postal Service sent Matthew Ziler a check in the amount of $6,686 representing in full and final settlement of his claims. I enclose a copy of the April 22, 2019 transmittal letter and check which was sent to Mr. Ziler. The letter clearly states "[t]he enclosed check operates as a complete releasee of any claims against the United States Postal Service and against the employee of the Government whose act or omission gave rise to the claim by reason of the same subject matter."

We are bound by the Federal Statutes, and, under the law, cashing of a settlement check constitutes a full release of any and all claims arising from the same incident and bars consideration of any further claims. Therefore, we do not have the authority to pay any additional amount and Matthew Ziler's supplemental claim cannot be considered.[9]

On June 16, 2021, Matthew Ziler filed the instant action against the USA, USPS, and Cassandra Daniels under the Federal Tort Claims Act, 28 U.S.C. § 2671, seeking damages for his personal injuries and property damages. In the instant motion to dismiss, defendants seek dismissal of all of the plaintiff's claims on grounds this Court lacks subject matter jurisdiction over Matthew's claims.

Oral argument on the instant motion was conducted on January 21, 2022. The chief inquiry at oral argument was whether there had been a "meeting of the minds" between Matthew Ziler and the government concerning the cashing of the first check

---

[9] *See* Exh D. to Govt's Exh 1 [Doc. 3-3].

4

as a full and final settlement of all of Matthew's claims. Following oral argument, the Court allowed the parties 60 days to conduct jurisdictional discovery. Both parties submitted supplemental briefing in connection with the motion. Additionally, Matthew submits his own Declaration, while the government submits the Declaration of Tara D. Lennix, the USPS Louisiana District Tort Claims Coordinator. After consideration of these submissions and the applicable law, the matter is now ripe for review.

## II.    LAW AND ANALYSIS

### A. Legal Standard

#### 1.  Rule 12(b)(1) Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed.R.Civ.P.12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *citing Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).

There are two types of challenges to a court's subject matter jurisdiction under Rule 12(b)(1): 'facial' attacks and 'factual' attacks. *Brown v. Peterson*, 2006 WL

349805, at *4 (N.D. Tex. Feb. 3, 2006), *citing Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981); *see also Brooks v. Snow,* 313 F.Supp.2d 654, 658 (S.D. Tex. 2004).    A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges jurisdiction based solely on the pleadings. *Paterson,* 644 F.2d at 523.  When ruling on a facial attack, the court must presume that factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction.  *Id.*  By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence that contradicts the jurisdictional allegations in the complaint. *Id.*  In a factual attack, the plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction.  *Id.*

Additionally, when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.  *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.  *Id.*

### 2. Sovereign Immunity

The United States, as sovereign, is immune from suit unless it consents to be sued. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), *citing Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242, 244 (1940). The United States can be sued only by its permission, and only by procedures set forth by Congress. *United States v. Dalm*, 494 U.S. 596, 608-10 (1990); *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981); *United States v. Testan*, 424 U.S. 392, 399 (1976). Any lawsuit against the United States must be brought in compliance with a specific statute that expressly waives sovereign immunity. *Testan*, 424 U.S. at 399. Such a waiver of sovereign immunity must be strictly construed in favor of the sovereign and may not be extended beyond the explicit language of the statute. *Soriano v. United States*, 352 U.S. 270 (1957); *see United States Department of Energy v. Ohio*, 503 U.S. 607 (1992).

The United States has provided a limited waiver of sovereign immunity from suit with respect to certain torts committed by federal government employees and has set forth the limits and conditions of that waiver in the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994); 28 U.S.C. §§ 2671, *et seq*. "However, this waiver 'must be scrupulously observed, and not expanded, by the courts." *Turner ex rel. Turner*, 514 F.3d 1194, 1200 (11th Cir. 2008), *quoting Suarez v. United States*, 22

F.3d 1064, 1065 (11th Cir. 1994). Under the FTCA, "the United States is liable for damages 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her] office or employment.'" *Beltran v. United States*, 2016 WL 8857009, at *8 (W.D. Tex. Dec. 9, 2016), *citing Houston v. U.S. Postal Service*, 823 F.2d 896, 898 (5th Cir. 1987). In *Houston*, the Fifth Circuit held that before the United States is forced to defend a tort suit arising from a collision between a private vehicle and a government vehicle, the plaintiff -- at least one who knows or should know that the driver was a government employee -- must meet the FTCA's administrative exhaustion requirements and then timely commence suit against the government as provided by 28 U.S.C. § 2401(b). *Id.* at 902.

## B. Analysis

### 1. The plaintiff's personal injury claims are not barred under 28 U.S.C. § 2672.

The defendants argue that the plaintiff's claims must be dismissed because the plaintiff's acceptance of payment for his first administrative tort claim constituted a release of any and all subsequently filed claims. A federal agency may settle a claim brought against it pursuant to the FTCA. 28 U.S.C § 2672. Section 2672, which addresses the tort claims procedure for claims brought against the United States, states in relevant part:

> The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, <u>by reason of the same subject matter</u>.

28 U.S.C. §2672 (emphasis added).

In support of their argument, the defendants cite several cases wherein a plaintiff's acceptance of payment for his first administrative tort claim constituted a release of any and all other claims. *See, e.g., Walker v. United States*, 2006 WL 1209929, at *3 (N.D. Ga. Apr. 28, 2006) (finding plaintiff's district court claims were barred by prior release of administrative tort claims); *Laguer v. United States*, 257 F. Supp. 3d 198, 205 (D.P.R. 2017) ("the Court interprets section 2672 as barring a claimant who previously settled with a federal agency pursuant to the FTCA from bringing any subsequent claims, regardless of type, that arise out of the same underlying factual scenario."); *Murphree v. United States*, 2011 WL 1980371 (D. Kan. 2011) (dismissing complaint where plaintiff filed a SF-95 Form detailing damage to her car and indicated a "neck, back and head injury," accepted a settlement for the value of her car and later attempted to bring a claim for personal injury); *Wright v. United States*, 427 F. Supp. 726, 729 (D. Del. 1977) (holding acceptance of payment from USPS to settle administrative claim arising from the same accident constituted release barring district court action); *Wexler v. Newman*, 311 F. Supp. 906, 907 (E.D. Pa. 1970) (holding that where plaintiff previously filed

an administrative claim that had been paid in full, any further recovery was barred). In each of the cases above, the court found that acceptance of payment for the tort claim acted as a complete release and barred recovery of additional claims against the United States.

The Court was unable to find cases within the Fifth Circuit where the court barred a plaintiff's claim under the circumstances presented in this case. The Court finds some guidance, however, in *Bunker v. U.S.*, 2013 WL 5524688 (D. Oregon 2013). In *Bunker*, the plaintiff, a representative of the estate of her late husband, filed suit against the United States alleging that her husband's vehicle was struck by a mail truck operated by the USPS and that her late husband sustained significant physical injuries resulting in physical, mental, and emotional pain. *Bunker*, 2013 WL 5524688, at *1.

Prior to the plaintiff's lawsuit, the decedent had filed an administrative claim for damages to his vehicle resulting from the accident, using an SF 95. In the first SF-95, the decedent requested property damages in the amount of $3,011.86 and indicated in a box labeled "Personal Injury" that his injuries were "on going." *Id.* After receiving his request, the USPS sent the decedent a settlement check for $3,011.86, along with a letter stating that the check was for "full and final settlement of [his] claim." *Id.* The letter also stated that "[a]cceptance ... operates as a complete release and bars recovery of any additional or future claims against the United States,

the U.S. Postal Service, or any employee whose act or omission gave rise to the claim by reason of the same subject matter." *Id*. The decedent cashed the settlement check. *Id*.

Approximately two years later, the plaintiff filed a second claim to the USPS using a SF-95, seeking $423,955.69 for personal injury damages arising out of the 2009 accident. The USPS denied this claim, and the plaintiff's lawsuit followed. In the litigation, the United States filed a motion to dismiss the plaintiff's claims, arguing that the decedent's acceptance of the settlement check operated as a release of claims pursuant to 28 U.S.C. §2672. *Id*. As the government does in this case, the United States relied on *Murphree v. U.S.* 2011 WL 1980371 (D. Kansas 2011), in support of its argument that the plaintiff's claims were barred. However, the court distinguished *Murphree*, as follows:

> The United States argues that, like Ms. Murphree, Mr. Bunker accepted and cashed a settlement check from the USPS that was accompanied by the disclaimer that acceptance of the check "operates as a complete release and bars recovery of any additional or future claims against the United States ... [based on] the same subject matter." [ . . . ] Like Ms. Murphree, Mr. Bunker did not include a dollar amount for his personal injuries when he filed his initial SF 95. Whereas the plaintiff in Murphree summarized her personal injuries on the SF 95, however, Mr. Bunker indicated that his personal injuries were ongoing and did not provide a summary. Based on the information in Mr. Bunker's initial SF 95, then, the amount of damages claimed clearly could not represent his personal injury costs, which were ongoing and not yet certain. *Murphree*, therefore, is not directly on point.

Id. at *5.

11

Analyzing the parties' intentions as evidenced by the extrinsic evidence and construing the ambiguous term against the drafter of the contract, the *Bunker* court found that the parties contracted to settle all claims for damage to the vehicle but did not contract for the settlement of Mr. Bunker's other claims arising from the 2009 incident.[10] Notably, the court the relied, in part, on a three-way conversation with Mr. Bunker and the United States in which the United States indicated to Mr. Bunker that a subsequent claim for personal injuries would be allowed after Mr. Bunker's vehicle damage claim was settled.[11]

The Court also finds *Macy v. United States*, 557 F.2d 391 (3rd Cir. 1977), instructive. The plaintiff in *Macy* was involved in an accident with a mail truck and submitted a claim form.[12]  In the form, the plaintiff filled in $565.40 in property damages, left the line for a personal injury claim blank, and filled in $565.40 for the total amount sought. *Macy,* 557 F.2d at 392.  The form contained the following printed certification: "I certify that the amount of claim covers only damages and injuries caused by the accident and agree to accept said amount in full satisfaction

---

[10]  The *Bunker* court applied Oregon law of contracts to the dispute regarding the settlement and release.

[11] Although the United States challenged the accuracy of the plaintiff's declaration in this regard, the court construed this disputed fact in the light most favorable to plaintiff.

[12] In 1977, the form, the plaintiff filled out was called a 95-105 form.  This form expressly stated that "[i]f claimant intends to file claim for both personal injury and property damages, claim for both must be shown on line 10 of this form. Separate claims for personal injury and property damage are not acceptable." *Macy*, 557 F.2d at 392.

and final settlement of this claim."  In completing the form, however, the plaintiff altered these printed words by striking out an italicized portion of the sentence and adding to the statement the phrase "if it covers the damages."  *Id.*

Thereafter, the USPS sent a check to the plaintiff in the amount of $550.10. *Id.*  In a letter accompanying the check, the USPS indicated that acceptance of the amount operated as a complete release of any claim against the US.  *Id.*  In response to this letter, the plaintiff wrote:

> This is to acknowledge receipt of your postal service check in the amount of $550.10, which I am using for payment of repairs to my vehicle resulting from an accident with one of your postal trucks.
>
> I wish to advise at this time that this amount does not cover my medical expenses resulting from injury from that accident.  I am undergoing treatment now and will advised you as to the extent of my injuries and cost at a later date, when they are known to me.

*Id.* at 393.

The plaintiff later cashed the check and submitted a second claim for personal injuries.  Finding that there was no meeting of the minds between the parties based on their communications, the Third Circuit explained:

> Reliance on 28 U.S.C. s 2672 does not help the government. For our purposes, it simply codifies certain principles of contract law: if there is "acceptance by the claimant" of an offer of "compromise, or settlement" by the government, that acceptance "shall constitute a complete release". The necessary inquiry here is to isolate the offer and acceptance. Only when these elements present a meeting of the minds may we find an agreement by the claimant to relinquish her right.

If anything, the federal release statute militates against the government's theory. Section 2672 does not provide that acceptance of payment of cash or a government check operates as a "complete release". In order to constitute a "complete release of any claim", Congress specifically provided that the acceptance be (1) an award, (2) a compromise, or (3) a settlement.

The Postal Service's letter of January 31, 1974 was an attempt to create a contractual release, not precisely authorized by the statute, to-wit, an offer that acceptance of a check would operate "as a complete release". Since § 2672 does not provide that acceptance of a check operates as a release, the government must rely on common law contract principles. The offeree, Ms. Macy, responded with a counter-offer, and cashed the check. Under these circumstances neither a contractual nor a statutory release was entered into by Ms. Macy.

**To qualify as a release under the statute, there had to be a compromise or settlement reached by a meeting of the minds**. We find none. On the basis of the documentary evidence presented to the district court, we hold that it was error to find a release. Accordingly, it was also error to grant summary judgment in favor of the government on the theory that the claimant had accepted an "award, compromise or settlement" which constituted a release of "any claim against the United States".

*Id.* at 394 (emphasis added) (internal footnote omitted).  In so holding, the court

explained that, where there was no meeting of the minds between the parties as to

the settlement of the first claim, the plaintiff did not release additional claims against

the Postal Service.

As in *Bunker* and *Macy,* the government argues in this case that the cashing

of the check constitutes a full and final settlement of all claims the Zilers may have

brought against the USPS, and that Matthew Ziler released all other claims –

including his claim for personal injuries -- when he cashed the check for the property

14

damage. The plaintiff argues that because he intended only to accept the offer of settlement for his joint property damage claim, he has not waived his personal injury claim. In support of this argument, Matthew contends he was specifically directed by the USPS Louisiana District Tort Claims Coordinator herself to file two separate claims and, therefore, the cashing of the check relating to the property damage claim did not constitute a settlement of his personal injury claim.

In his declaration attached to his Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction, Matthew Ziler avers that following the November 1, 2018 accident, he spoke with the local Post Master, who advised him to contact Tara Lennix in order to file his claim. *See* Declaration of Matthew Ziler, at ¶ 7. Within a few days of the accident, he contacted Ms. Lennix and requested that a claim file be opened for his personal injuries sustained in the accident. *Id.* at ¶ 8. Following that conversation, Matthew Ziler received a claim packet from Ms. Lennix, along with a cover letter. The cover letter was dated December 3, 2018 and was addressed only to Matthew. That letter bore U.S.P.S. Case Number 700-19-00414026A/0078. *Id.* at ¶ 9. Matthew declares that he also contacted Ms. Lennix to tell her that the vehicle he was operating at the time was co-owned by him and his father, James, Ziler, and that the vehicle sustained damages. Matthew states that he specifically asked if the claims for his personal injury and for the property damage for the truck which he co-owned with his father would be separate claims and he

15

was advised that they were.  *Id.* at ¶ 10.  Matthew states that he thereafter received a second claim packet form.  The cover letter accompanying this packet was <u>addressed to Matthew and James Ziler</u>.  This letter was dated December 21, 2018 and bears U.S.P.S. Case Number 700-19-00414026A.[13]  *Id.* at ¶ 11.

According to the plaintiff, Paragraph 4 of each letter he received from Lennix, states that if damaged property is in joint ownership, the claim must be made in both names and both parties must sign where signatures are required.  *Id.* at ¶ 12.  Matthew also notes that in Paragraph 1 of the letter sent to him and his father, it states that "[i]n those areas requiring information that is not pertinent to your claim, please indicate same by remarks such as "Not Applicable (N/A)", "No," or "None."  *Id.* at ¶ 13.  Therefore, when filling out the form for the property damage claim, Matthew asserts that he and his father carefully wrote "N/A" in the section for personal injury, because that form was being submitted for property damages only, owed jointly to Matthew and James, and because James was not involved in the accident and sustained no personal injuries.  *Id.*

Importantly, Matthew also states that on Page 2 of the SF-95 Form itself, the first instruction states that "[if the incident involves more than one claimant, each

---

[13] The declaration of Tara Lennix submitted by the government confirms that she provided separate SF-95 forms on separate occasions, one specifically to Matthew Ziler and a second jointly to Matthew and James Ziler.  [Doc. 14-1, at ¶¶ 4-5].  The declaration further confirms that Ms. Lennix spoke to Matthew Ziler over the phone when he requested a claim packet, however, she does not recall the specific conversation. Id. at ¶ 3.

claimant should submit a separate claim form." *Id.* at ¶ 14.  Matthew contends that this language and his conversations with Ms. Lennix indicated to him that his claim for his personal injuries should be submitted separately from the SF-95 which was submitted jointly with his father for the joint property damages. *Id.*  Matthew states that the jointly submitted SF-95 for property damages was submitted first, because Matthew was still being treated for his personal injuries at that time.  Before he filed his SF-95 for personal injuries, Matthew states that he and his father received a check made out to both of them, which also contained a cc: to Case Number 700-19-00414026A (absent the /0078, included in the case number on the packet that he received individually).  *Id.* at ¶ 17.  Because the only claim pending at that time was the property damage claim, and because the check was made out to Matthew and James jointly, Matthew assumed that the check enclosed with the April 22, 2019 letter was for the payment of the property damages only, so he cashed the check.  *Id.* at ¶ 18. Matthew states that it was not his intention, nor did he knowingly completely release his personal injury claim when accepting the joint property damage check addressed to him and his father.  *Id.* at ¶ 21.

When the Federal Tort Claims Act is implicated, the substantive law governing the claims is "the law of the place where the act or omission occurred." 28 USC §1346 and §2672.  *Macy*, 557 F.2d at 394.  Pursuant to LSA-C.C. Art. 3071, a compromise is a contract whereby the parties, through concessions made by one

or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. The compromise instrument is the law between the parties and must be interpreted according to the parties' true intent. *Brown v. Drillers, Inc*., 630 So.2d 741, 748 (La. 1994). LSA-C.C. Art. 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication.  When a dispute arises as to the scope of the compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. *Moak v. American Automobile Ins. Co*., 134 So.2d 911 (La. 1961).

With these legal principles in mind and based on the foregoing facts and the reasoning as set forth in *Bunker* and *Macy*, the undersigned concludes that there was no meeting of the minds that the USPS's proffer of a check in the amount of $6,686.00 was an offer of settlement on all of Matthew Ziler's claims.[14] Thus, in cashing that check for $6,686.00, the plaintiff did not accept that offer of settlement and release all of his remaining personal injury claims.

---

[14] As in *Macy,* the court notes that the principles set forth in 28 U.S.C. § 2672 do not dictate any different result here.  Under federal law, a settlement is a contract. *Guidry v. Halliburton Geophysical Servs., Inc.*,976 F.2d 938, 940 (5th Cir. 1992). The federal common law of contracts "uses the core principles of the common law of contracts that are in force in most states." *Smith v. United States,* 328 F.3d 760, 767 n.8 (5th Cir. 2003). For a valid contract to exist under federal law, there must be an offer, acceptance, consideration, essential terms and a meeting of the minds among the parties.  *Johnson v. BP Exploration & Production,* 786 F.3d 344, 355-59 (5th Cir. 2003) For the reasons discussed, there was no meeting of the minds in this case with respect to the settlement of Matthew Ziler's personal injury claim.

18

The undersigned notes that, however, to the extent that the plaintiff seeks to recover additional damages for the property damage to his car, he has, in fact, settled that matter with the USPS, and his claim for property damages in the instant lawsuit is barred. The evidence shows that the plaintiff understood that the check he cashed was an offer of settlement from the USPS for his property damages, and he has admitted as much. Indeed, in his Declaration the plaintiff acknowledges that the $6,686.00 check was for the payment of property damages.

Accordingly, in cashing that check, the plaintiff settled and released any and all further claims related to the property damage associated with the November 1, 2018 accident. The plaintiff cannot now seek additional property damages claims in the instant lawsuit, and it is therefore recommended that any claims for property damage in the instant lawsuit be DENIED AND DISMISSED WITH PREJUDICE.

**2.   The plaintiff's claims against Cassandra Daniels should be dismissed.**

It is well established that FTCA claims may be brought against only the "United States," and not the agencies or employees of the United States. *Walters v. Smith*, 409 F. App'x 782, 783–84 (5th Cir. 2011), *citing* 28 U.S.C. §§ 2671, 2679(a), (b)(1) (providing that FTCA does not authorize suits against federal agencies, and FTCA remedy is exclusive with respect to injuries caused by federal employees acting within the scope of their employment); *Galvin v. Occupational Safety & Health Admin.,* 860 F.2d 181, 183 (5th Cir.1988) ("Thus, an FTCA claim against a

federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction."); *Smith v. United States,* 561 F.3d 1090, 1099 (10th Cir.2009) ("The United States is the only proper defendant in an FTCA action."); *Jackson v. Kotter,* 541 F.3d 688, 693 (7th Cir.2008) ("The only proper defendant in an FTCA action is the United States."); *Roman v. Townsend,* 224 F.3d 24, 27 (1st Cir.2000) (The "FTCA requires that the named defendant in an FTCA action be the United States and only the United States."); *Allgeier v. United States,* 909 F.2d 869, 871 (6th Cir.1990) ("Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction.").

Considering the foregoing, this Court lacks jurisdiction over any claim against Cassandra Daniels, an employee of the USPS, and the claims against her must be dismissed.

Considering the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss [Doc. 3] filed by the defendants be GRANTED IN PART AND DENIED IN PART. The motion to dismiss the plaintiff's property damages claims should be GRANTED, and the property damages claims should be DENIED AND DISMISSED WITH PREJUDICE, those claims having been settled by the plaintiff. The motion to dismiss the plaintiff's claim for personal injuries should be DENIED. Additionally, all claims against Cassandra Daniels should be DISMISSED for want of jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 6th day of April, 2022 at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**