UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MATTHEW ZILER | CASE NO. 6:21-CV-01697 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| USA ET AL | MAGISTRATE JUDGE CAROL B. WHITEHURST |

**MEMORANDUM RULING**

This is a Federal Tort Claims Act ("FTCA") case arising out of an automobile accident involving an employee of the United States Postal Service ("USPS"). The present matter before the Court is an Objection filed by the United States to the Report and Recommendation ("R&R") [ECF No. 16] by the Magistrate Judge. The Magistrate Judge recommends that the Motion to Dismiss [ECF No. 3] be granted with respect to plaintiff Matthew Ziler's claims against defendant Cassandra Daniels—the USPS employee involved in the accident—and Ziler's claim against the United States for additional property damages.[1] However, the Magistrate Judge recommends that the Motion to Dismiss be denied with respect to Ziler's personal injury claim against the United States.[2] The Court has conducted an independent review of the pleadings, the parties' arguments, and the relevant authorities and adopts the R&R's recommendations with respect to Ziler's additional property damage claim and his claim against Cassandra Daniels. However, the Court concludes that Ziler's personal injury claim is barred by a statutory release and therefore declines to adopt the R&R's recommendation with respect to Ziler's personal injury claim. Accordingly,

---

[1] ECF No. 16 at 19-20.
[2] *Id.*

1

the Court **GRANTS** the United States' Motion to Dismiss for Lack of Jurisdiction [ECF No. 3] in its entirety and orders that the case be **DISMISSED**.

## I.
## BACKGROUND

Ziler alleges personal and property damages arising out of a collision between his truck and a USPS vehicle driven by Cassandra Daniels. The R&R sets forth the relevant facts:

> The truck operated by Matthew Ziler was owned by Matthew and his father, James Ziler. On or about December 24, 2018, Matthew and James Ziler jointly submitted a Standard Form 95 ("SF-95") to the USPS seeking $9,750.00 in damages related to the November 1, 2018 accident.[3] In Section 9 of the SF-95, entitled "Property Damage," plaintiffs wrote "back passenger door, windshield, rim, tire and bed of truck."[4] In Section 10 of the SF-95, entitled 'Personal Injury/Wrongful Death,' plaintiffs wrote 'N/A.'[5] The SF-95 stated that there was a sum certain of $9,750.00 in property damage; the property damage claim is the only claim that was presented to the USPS in the first SF-95.
>
> After receiving the SF-95, the Tort Claims Accounting Service Center of the USPS sent a letter to Plaintiffs on or about April 22, 2019,[6] which states:
>
>> Enclosed please find a check in the amount of $6,686.00 made payable to Matthew and James Ziler in full and final settlement of the claim filed on behalf of the above referenced claimants.
>>
>> Pursuant to 28 U.S.C. § 2672 and 39 C.F.R. § 912.14, acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the United States Postal Service or any employee whose act or omission gave

---

[3] The First SF-95 submitted by the plaintiffs is attached as Exhibit A to the July 14, 2021 Declaration of David Kipper, Gov't Exh. 1 [ECF No. 3-3].
[4] *Id.*
[5] *Id.*
[6] *See* Exhibit B to Gov't Exh. 1 [ECF No. 3-3].

2

rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or any outstanding indebtedness, resulting from this incident must be satisfied from the proceeds of this check.[7]

Included with the letter was a check made payable to Matthew and James Ziler in the amount of $6,686.00.[8] The check was cashed/deposited on April 25, 2019, and the check cleared on April 26, 2019.[9] Approximately six months later, on October 29, 2020, plaintiff Matthew Ziler submitted a second SF-95, concerning the same November 1, 2018 accident, but this time, the form included a claim for personal injury damages, as well as a claim for the full amount of Matthew's property damage, seeking a total of $2,509,750.00.[10]

In response to this second claim, on December 21, 2020, Kimberly Herbst, a supervisor and tort claims examiner/adjudicator for the USPS, sent a letter to Jeremy Suire, counsel for Matthew Ziler, which states:

> This letter refers to the second claim filed by or on behalf of Matthews Ziler seeking damages in the amount of $2,509,750 arising out of the November 1, 2018 motor vehicle accident with a Postal Service vehicle in St. Martinville, LA. Matthew Ziler filed his first claim regarding this accident with the Postal Service on or about November 1, 2018 requesting $9,750 for property damage.
>
> On April 22, 2019, the Postal Service sent Matthew Ziler a check in the amount of $6,686 representing in full and final settlement of his claims. I enclose a copy of the April 22, 2019 transmittal letter and check which was sent to Mr. Ziler. The letter clearly states "[t]he enclosed check operates as a complete releasee of any claims against the United States Postal Service and against the employee of the Government whose act or omission gave rise to the claim by reason of the same subject matter."
>
> We are bound by the Federal Statutes, and under the law, cashing of a settlement check constitutes a full release of any and all claims

---

[7] *Id.*
[8] *Id.*
[9] *See* Exhibit C. Govt Exh. 1 [ECF No. 3-3].
[10] *See* plaintiff's Complaint [ECF No. 1 at ¶ XXVI].

3

arising from the same incident and bars consideration of any further claims. Therefore, we do not have the authority to pay any additional amount and Matthew Ziler's supplemental claim cannot be considered.[11]

On June 16, 2021, Matthew Ziler filed the instant action against the USA, USPS, and Cassandra Daniels under the Federal Tort Claims Act, 28 U.S.C. § 2671, seeking damages for his personal injuries and property damages. In the instant motion to dismiss, defendants seek dismissal of all of the plaintiff's claims on grounds this Court lacks subject jurisdiction over Matthew's claims."

\* \* \*

"In his declaration attached to his Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction, Matthew Ziler avers that following the November 1, 2018 accident, he spoke with the local Post Master, who advised him to contact Tara Lennix in order to file his claim. *See* Declaration of Matthew Ziler, at ¶ 7. Within a few days of the accident, he contacted Ms. Lennix and requested that a claim file be opened for his personal injuries sustained in the accident. *Id.* at ¶ 8. Following that conversation, Matthew Ziler received a claim packet from Ms. Lennix, along with a cover letter. The cover letter was dated December 3, 2018 and was addressed only to Matthew. That letter bore U.S.P.S. Case Number 700-19-00414026A/0078. *Id.* at ¶ 9. Matthew declares that he also contacted Ms. Lennix to tell her that the vehicle he was operating at the time was co-owned by him and his father, James, Ziler, and that the vehicle sustained damages. Matthew states that he specifically asked if the claims for his personal injury and for the property damage for the truck which he co-owned with his father

---

[11] *See* Exh D. to Govt's Exh 1 [ECF No. 3-3].

4

would be separate claims and he was advised that they were. *Id.* at ¶ 10. Matthew states that he thereafter received a second claim packet form. The cover letter accompanying this packet was <u>addressed to Matthew and James Ziler</u>. This letter was dated December 21, 2018 and bears U.S.P.S. Case Number 700-19-00414026A.[12] *Id.* at ¶ 11.

According to the plaintiff, Paragraph 4 of each letter he received from Lennix, states that if damaged property is in joint ownership, the claim must be made in both names and both parties must sign where signatures are required. *Id.* at ¶ 12. Matthew also notes that in Paragraph 1 of the letter sent to him and his father, it states that '[i]n those areas requiring information that is not pertinent to your claim, please indicate same by remarks such as "not Applicable (N/A)", "No," or "None." *Id.* at ¶ 13. Therefore, when filling out the form the property damage claim, Matthew asserts that he and his father carefully wrote "N/A": in the section for personal injury, because that form was being submitted for property damages only, owed jointly to Matthew and James, and because James was not involved in the accident and sustained no personal injuries. *Id.*

Importantly, Matthew also states that on Page 2 of the SF-95 Form itself, the first instruction states that "[if the incident involves more than one claimant, each claimant should submit a separate claim form." *Id.* at ¶ 14. Matthew contends that this language and his conversations with Ms. Lennix indicated to him that his claim for his personal injuries should be submitted separately from the SF-95

---

[12] The declaration of Tara Lennix submitted by the government confirms that she provided separate SF-95 forms on separate occasions, on specifically to Matthew Ziler and a second jointly to Matthew and James Ziler. [Doc. 14-1 at ¶¶ 4-5]. The declaration further confirms that Ms. Lennix spoke to Matthew Ziler over the phone when he requested a claim packet, however, she does not recall the specific conversation. Id. at ¶ 3.

5

which was submitted jointly with his father for the joint property damages. *Id.* Matthew states that the jointly submitted SF-95 for property damages was submitted first, because Matthew was still being treated for his personal injuries at that time. Before he filed his SF-95 for personal injuries, Matthew states that he and his father received a check made out to both of them, which also contained a cc: to Case Number 700-19-00414026A (absent the /0078, included in the case number on the packet that he received individually). Id. at ¶ 17. Because the only claim pending at that time was the property damage claim, and because the check was made out to Matthew and James jointly, Matthew assumed that the check enclosed with the April 22, 2019 letter was for the payment of the property damages only, so he cashed the check. *Id.* at ¶ 18. Matthew states that it was not his intention, nor did he knowingly completely release his personal injury claim when accepting the joint property damage check addressed to him and his father. *Id.* at ¶ 21.[13]

## II.
## ANALYSIS

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."[14] Because "[s]overeign immunity is jurisdictional in nature,"[15] Congress' "waiver of [sovereign immunity] must be unequivocally expressed in statutory text and will not be implied."[16] The FTCA expressly waives sovereign immunity and

---

[13] ECF No. 16.
[14] *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,* 461 U.S. 273, 287 (1983); *see also Williamson v. U.S. Dep't of Agric.,* 815 F.2d 368, 373 (5th Cir.1987) ("The doctrine of sovereign immunity is inherent in our constitutional structure and ... renders the United States [and] its departments ... immune from suit except as the United States has consented to be sued.").
[15] *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994).
[16] *Lane v. Pena,* 518 U.S. 187, 192 (1996) (internal citation omitted); *see also Petterway v. Veterans Admin. Hosp.,* 495 F.2d 1223, 1225 n. 3 (5th Cir. 1974) ("It is well settled ... that a waiver of sovereign immunity must be specific and explicit and cannot be implied by construction of an ambiguous statute.").

permits suits against the United States that are grounded on state-law tort claims for money damages.[17] An FTCA claimant must first "present [ ] the claim to the appropriate Federal agency," and this claim must be finally denied by the agency in writing before the claimant can commence an FTCA suit.[18] This requirement is jurisdictional.[19] The statute also addresses the procedures for and effect of a settlement and release of claims under the FTCA. Specifically, 28 U.S.C. § 2672 provides that the "acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim, by reason of the same subject matter." The relevant USPS regulation governing FTCA settlements tracks this statutory language:

> [A]cceptance by the claimant, his agent, or legal representative, of any award, compromise, or settlement made pursuant to the provisions of the Federal Torts Claim Act, shall be final and conclusive on the claimant, his agent, or legal representative, and any other person on whose behalf or for whose benefit the claim has been presented, and shall constitute a complete release of any claim against the United States and against any employee of the Government whose act or omission gave rise to the claim by reason of the same subject matter.[20]

Here, Ziler timely filed a form SF-95 with the USPS, listing his name and his father's name (James Ziler) as claimants.[21] The instructions on the forms signed by Ziler state that "[i]f claimant intends to file for both personal injury and property damage, the amount for each *must* be shown in item number 12 of this form."[22] Ziler entered $9750 for property damage on line 12A of his form SF-95.[23] But, he entered "N/A" for personal injury and wrongful death damages on lines 12B

---

[17] 28 U.S.C. § 2671, et seq.; *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006).
[18] *Gauthreaux v. United States*, No. 20-CV-1894, 2021 WL 704397 (E.D. La. Feb. 23, 2021). The claim is typically submitted on an official government form—the SF-95. *Id.*
[19] *Id.*
[20] 39 C.F.R. § 912.14.
[21] ECF No. 3-3 at 4.
[22] *Id.* at 5 (emphasis added).
[23] *Id.* at 4.

and 12C of the form.[24] He then entered $9750 as the "total" amount of damages on line 12D of the form.[25] Line 12D of the form specifically states that: "failure to specify may cause forfeiture of your rights."[26] On April 22, 2019, Ziler received a letter from the USPS by certified mail with a check in the amount of $6,686.[27] This letter cited 28 U.S.C. § 2672 and 39 C.F.R. § 912.14, and stated that "acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the U.S. Postal Service, or any employee whose act or omission gave rise to the claim by reason of the same subject matter."[28] Ziler cashed/deposited this settlement check.[29]

The United States contends that, by depositing/cashing the settlement check, Ziler is barred from now claiming personal injury damages that were not listed in the original SF-95. The Court agrees. Ziler prepared, signed, and submitted the original SF-95, listing himself as one of the claimants. He is thus a "claimant" within the meaning of section 2672.[30] The USPS sent Ziler the settlement check as a proposed settlement and compromise of his property damage claims, and Ziler "accepted" the proposed settlement by cashing/depositing the check. Under section 2672, Ziler's acceptance of the settlement check triggered the release in that provision, and this release applies to "*any* claims," including Ziler's personal injury claim.[31]

Ziler counters that he believed that the USPS settlement check was limited to the joint property damage claim asserted in his original SF-95, and that he did not intend to settle his personal injury claim. Ziler first points to the instructions for the SF-95 requiring that multiple

---

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 6.
[28] *Id.*
[29] *Id.* at 9.
[30] 28 U.S.C. § 2672.
[31] *Id.*

8

claimants must file separate SF-95 forms. Ziler believed that this instruction required him to file two separate SF-95 forms: one form for his joint property damage claim and a second form for his individual personal injury claim. Ziler also contends that USPS personnel confirmed his understanding that the claims should be submitted separately. Accordingly, Ziler argues that there was no "meeting of the minds" with respect to a settlement of his individual personal injury claim. The Magistrate Judge agreed with Ziler's argument. Citing an opinion out of the District of Oregon and an older Third Circuit decision—*Bunker v. United States*[32] and *Macy v. United States*[33]—the R&R concludes there was no "meeting of the minds" between the United States and Ziler with respect to whether the parties' release covers Ziler's property damage claim and his personal injury claim.

The caselaw does not support Ziler's argument. An overwhelming majority of courts have held that, under almost identical circumstances, a plaintiff cannot assert a claim under the FTCA for personal injuries when the plaintiff lists only property damages on an SF-95 and then subsequently accepts a settlement for that property damage claim.[34] These courts reason that a claimant's mistaken belief in accepting a settlement check for property damages is merely a "unilateral mistake" that is not sufficient to vitiate the release.[35] For example, in *Arnold v. United States*, the plaintiffs were similarly involved in a collision with a USPS vehicle and filed an SF-95

---

[32] 12-CV-1742, 2013 WL 5524688 (D. Or. Oct. 3, 2013).
[33] 557 F.2d. 391, 394 (3d. Cir. 1977).
[34] *See Contreras v. United States*, 19-CV-12870, 2022 WL 970192, at *5 (D.N.J. Mar. 31, 2022); *Circelly v. United States*, No. 17-5269, 2018 WL 3000334 (D.N.J. Jun. 15, 2018); *Arnold v. United States*, 21-CV-399, 2022 WL 1045651, at *2 (D.N.M. Apr. 7, 2022); *Laguer v. United States*, 257 F. Supp. 3d. 198, 205-06 (D.P.R. 2017); *Murphree v. United States*, No. 10-4122, 2011 W.L 1980371, at *7 (D. Kan. May 20, 2011); *Wright v. United States*, 427 F. Supp. 726 (D. Del. 1977); *Adams v. United States*, 97-0706, 1999 WL 1059680 at *1 (W.D. Va. Mar. 3, 1999).
[35] *See, e.g., Adams*, 1999 WL 1059680 at *1 (holding that the claimant had "demonstrated a merely unilateral mistake that is insufficient to vitiate the general lease."); *see also Contreras*, 2022 WL 970192, at *6-7 (holding that "the possibility that a layman misunderstood the ramifications of accepting a settlement award even though the ramifications were clearly delineated in the standard claim form and in the [USPS] letter…" was a unilateral mistake that was not sufficient to resend a release under the FTCA".

listing only an amount for property damages.[36] The USPS sent plaintiffs a check for a portion of their property damage claim. As here, the check was accompanied by a letter stating that acceptance of the check "operates as a complete release and bars recovery of any additional or future claims against the United States...."[37] The plaintiff cashed the check and subsequently sent the USPS "settlement demands" for "personal injury damages."[38] The court, however, rejected the plaintiff's argument that his "subjective intent" was to settle only his property damage claim. According to the court:

> On this topic, Mr. Arnold argues that the Government "trapped" him with "legal language" through a "technical" government procedure that, in his view, undermines the FTCA's goal of just compensation. Mr. Arnold did not intend to settle his personal injury claim by cashing the check; rather, he figured it was compensation for property damages only. Even if he misunderstood the agreement's terms, however, Mr. Arnold's subjective intent does not change the legal effect of his objective actions.
>
> In sum, the record reveals that Mr. Arnold objectively assented to USPS' settlement offer by cashing the check, thereby binding himself to the terms of such agreement. Most importantly, the agreement "bars recovery of any additional or future claims against the United States, [USPS] and/or government employee(s) whose act(s) or omission(s) gave rise to the claim by reason of the same subject matter." Because the instant claims involve the same allegations, the Court must dismiss [plaintiff's personal injury claim] for lack of subject matter jurisdiction.[39]

The Court finds the reasoning of these cases persuasive. In the present case, Ziler accepted the USPS's settlement check by cashing/depositing it. By accepting this check, he released any remaining claims based on section 2672. As in *Arnold*, Ziler's **subjective** belief that he was only settling his property damage claim is irrelevant.[40]

---

[36] 2022 WL 1045651 at *1.
[37] *Id.*
[38] *Id.*
[39] *Id.* at *3 (citations and footnotes omitted).
[40] Many courts apply state contract law in addressing disputes over the release of FTCA claims. *See, e.g., Evans v. United States*, No. 6:15-CV-328-RP, 2017 WL 11637975, at *1 (W.D. Tex. Oct. 31, 2017). In *Evans*, the court observed that the Fifth Circuit "has not decided whether state or federal common law governs the enforceability of settlements" under the FTCA. *Id.* The court then quoted from *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014), observing that "the construction and enforcement of settlement agreements is governed by the

Ziler's argument is also inconsistent with the text of section 2672 and the USPS's settlement letter. In extending the release to "any claim," section 2672 does not distinguish between property damage claims and personal injury claims. Nor does it distinguish between individual and joint claims. Simply put, the phrase "any claim" means *any* claim, regardless of whether the claim is for property damage or personal injuries. The USPS settlement letter sent to Ziler largely tracks the release language in section 2672: acceptance of the settlement check "operates as a complete release and bars recovery of *any additional or future claims* against the United States...."[41] Again, the language of the letter does not distinguish between personal injury claims and property damage claims—or between joint and individual claims. Ziler's personal injury claim is an "additional or future" claim that falls within this release language.

Ziler further suggests that section 2672 and the USPS's settlement letter are vague in their use of the phrase "by reason of the same subject matter." Ziler contends that the phrase "the same subject matter" can be read to refer to the nature of the damages asserted in the SF-95, and that the "subject matter" of the release here is solely Ziler's joint property damage claim. Ziler's argument ignores the full text of section 2672's release provision. Specifically, the release applies to "any

---

principles of state law applicable to contracts generally." The court then applied state law to a dispute over a release under the FTCA. But the Fifth Circuit case cited by *Evans*, *Haller*, was not an FTCA case. State substantive law generally provides the rules of decision for tort claims brought against the United States under the FTCA. *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006). This reflects the fact that the FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b) (emphasis added). However, because the release of an FTCA claim is governed by a federal statute—28 U.S.C. § 2672—it is not clear what role state law would have in determining a dispute over the scope of a release under section 2672. *See Schwarder v. United States*, 974 F.2d 1118, 1125 (9th Cir. 1992) ("We conclude, as a matter of federal law, that an administrative settlement reached pursuant to section 2672 bars further claims by the settling party, without regard to the effect it would have as a matter of state law.") Regardless, Ziler's "meeting of the minds" argument does not hold up under Louisiana law. Under Louisiana law, the "irreducible minimum" for an enforceable contract is (1) contractual capacity, (2) consent, (3) cause, and (4) "object." *Haygood v Haygood*, 52,435 (La. App. 2 Cir. 1/16/19), 264 So.3d 1226, 1229-30. A "meeting of the minds" is essential to the consent requirement for an enforceable contract. *Id.* (citing *Belin v. Dugdale*, 45,405 (La. App. 2 Cir. 6/30/10), 43 So. 3d 272). This consent requirement, however, is an "objective standard" satisfied by the *objective* manifestation of intent by a contracting party. *Id.* In other words, the "mere lack of a subjective 'meeting of the minds' does not prevent formation of an enforceable contract." *Id.*
[41] *Id.* at 6 (emphasis added).

claim against the United States and against the employee of the Government whose act or omission gave rise to the claim, by reason of the same subject matter." Most courts have thus construed the phrase "same subject matter" as the acts or omissions that gave rise to the claims asserted in the SF-95, not the type of damages asserted in the SF-95.[42] Here, the "same subject matter" is the collision between Ziler's truck and a USPS delivery vehicle, and both Ziler's property damage and personal injury claims arose from that accident.

Moreover, *Macy* and *Bunker* do not support Ziler's argument. With respect to *Macy*, the facts of that case are distinguishable. The plaintiff in *Macy* received a settlement check accompanied by a letter from the USPS, as in the present case. However, before cashing the check, the plaintiff in *Macy* wrote to the USPS and stated:

> "This is to acknowledge receipt of your postal service check in the amount of $550.10, which I am using for payment for repairs for my vehicle resulting from an accident with one of your postal trucks. ***I wish to advise at this time this amount does not cover my medical expenses resulting from injury from that accident. I am undergoing treatment now and will advise you as to the extent of my injury and cost at a later date, when they are known to me***."[43]

The *Macy* court concluded that this language was a "counteroffer" that did not result in the formation of a contract.[44] Because there was no "meeting of the minds" with respect to settling the plaintiff's personal injury claims, those claims were not released. In contrast to *Macy*, there is no evidence of a similar counteroffer in the present case.

Ziler's reliance on *Bunker* is similarly misplaced. In *Bunker*, the USPS sent the plaintiff a settlement check and letter with similar release language. There, the court concluded that the release language in the USPS's settlement letter was ambiguous because "the parties reasonably

---

[42] *See, e.g., Laguer*, 257 F. Supp. 3d 198, 205 (D.P.R. 2017) (Section 2672 bars "a claimant who previously settled with a federal agency pursuant to the FTCA from bringing any subsequent claims, regardless of type, *that arise out of the same underlying factual scenario*.") (emphasis added).
[43] 557 F.2d. at 393 (emphasis added).
[44] *Id.*

dispute the meaning of the contractual language" and, therefore, "the relevant contractual language is not clear on its face and cannot be resolved as a matter of law."[45] The court then considered evidence of the plaintiff's subjective intent including, as here, alleged conversations between the plaintiff and representatives of the USPS.[46] The court concluded that the parties intended to settle only the plaintiff's claims for property damage and not any claims for personal injury damages.[47]

The court's decision in *Bunker* does not support Ziler's position in the present case. First, the mere fact that the parties to a dispute offer two different interpretations of a contractual or statutory provision does not compel a conclusion that language at issue is ambiguous. The Court must make an independent determination as to whether the language at issue is subject to more than one *reasonable* interpretation.[48] Here, as the Court has previously explained, the terms of the settlement reflected in the USPS's April 2019 settlement letter and the release language in section 2672 are not susceptible to more than one reasonable interpretation. Specifically, they provide that Ziler released all claims arising out of the collision between his vehicle and Daniels' USPS vehicle when he cashed/deposited the USPS's settlement check. *Bunker* is also inconsistent with the majority of courts holding that a claimant's subjective intent or unilateral mistake in settling an FTCA claim is not a ground to avoid the statutory release of section 2672.[49]

Finally, Ziler cannot rely on the doctrine of equitable estoppel to preserve his personal injury claim. "The doctrine of an equitable estoppel is designed to ensure fairness in the

---

[45] 2013 WL 5524688 at *4.
[46] *Id.*
[47] *Id.* at *5.
[48] *United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996) ("A statute is ambiguous if it is susceptible of more than one accepted meaning."); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 519 (5th Cir. 2004) (statutory language is ambiguous if it is "susceptible to more than one reasonable interpretation" or "more than one accepted meaning.") (quoting *United States v. Kay,* 359 F.3d 738, 743 (5th Cir.2004)); *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996) ("A contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.")
[49] *See, e.g., Arnold,* 2022 WL 1045651 at *3.

13

relationship between parties."⁵⁰ Equitable estoppel "precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose some material facts."⁵¹ While Ziler does not expressly argue equitable estoppel, he suggests that USPS's representative, Tara Lennix, led him to believe that he needed to file separate SF-95's for his property damage claim and personal injury claim.⁵² Ziler contends that, based on his conversations with Ms. Lennix, he believed that he could cash/deposit the April 2019 settlement check from the USPS for property damages and still claim personal injury damages in a future SF-95.⁵³

Ziler cannot rely on equitable estoppel to avoid the statutory release of section 2672. First, as a general rule, "equitable estoppel will not lie against the Government as it lies against private litigants."⁵⁴ Even if equitable estoppel could apply against the United States in the present case, the representations cited by Ziler were made in connection with obtaining and completing his original SF-95 in December 2018.⁵⁵ Ziler subsequently received the USPS's settlement check and letter four months later, in April 2019. There is no evidence in the record of any conversations between Ziler and Ms. Lennix in connection with the settlement check or the effect of cashing/depositing the USPS's settlement check. The record also includes a written transcript of a recorded conversation between Lennix and Ziler's attorney on October 15, 2019.⁵⁶ However, this

---

⁵⁰ *Francis v. United States*, 18-CV-4965, 2019 WL 3409922, at *3 (E.D.N.Y. July 26, 2019) (quoting *United States v. William L. Crow Const. Co.*, 826 F. Supp. 647, 656 (E.D.N.Y. 1993)).
⁵¹ *Id.*
⁵² ECF No. 15-1.
⁵³ *Id.*
⁵⁴ *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419 (1990); *Francis*, 2019 WL 3409922, at *3 (holding that equitable estoppel could not be used by an FTCA claimant to preserve his personal injury claims because "equitable estoppel will no lie against the Government.").
⁵⁵ To the extent that Ziler contends that Ms. Lennix's instructions misled him about having to file two separate SF-95's for property damages and personal injuries, the instructions for the SF-95 filed by Ziler specifically state that the claimant must complete the form by listing each category of damages along with a total amount of damages. Accordingly, even if Lennix provided erroneous information to Ziler, he could not have relied on this information to his detriment given written instructions to the contrary on the SF-95 he signed. *See* ECF No. 3-3 at 5.
⁵⁶ ECF No. 15-1.

conversation occurred approximately six months after Ziler cashed/deposited the USPS's settlement check. Accordingly, he cannot now claim that he relied on these October 2019 representations to his detriment when he cashed/deposited the settlement check six months earlier in April 2019. In sum, the record does not provide any grounds to apply equitable estoppel to preserve Ziler's personal injury claim from the effect of the statutory release under section 2672.

### III.
### CONCLUSION

For the foregoing reasons, the Court declines to adopt the R&R's recommendation with respect to Ziler's personal injury claim. The Court adopts the R&R in all other respects. Accordingly, the Court **GRANTS** the United States' Motion to Dismiss for Lack of Jurisdiction [ECF No. 3] in its entirety and orders that the case be **DISMISSED**.

THUS DONE in Chambers on this 1st day of July, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE